IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| JORDYN DAGHARA-LAWSON,<br><br>    Plaintiff,<br><br>vs.<br><br>GASNER AND WALLACE TF OPERATIONS LLC,<br><br>    Defendant. | Case No.: |

## COMPLAINT

Plaintiff, JORDYN DAGHARA-LAWSON ("DAGHARA" or "Plaintiff") sues Defendant, GASNER AND WALLACE TF OPERATIONS LLC, a Florida Limited liability company ("Defendant"), and alleges:

### JURISDICTION AND VENUE

1. Plaintiff brings this action under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2617 and the Fair Labor Standards Act, 29 U.S.C. § 216(b). Thus, the Court has subject matter jurisdiction under 28 U.S.C. §1331.[1]

2. This Court has supplemental jurisdiction over Plaintiff's Workers' Compensation Retaliation claim pursuant to 28 U.S.C. § 1367.

3. Plaintiff is a resident and citizen of Lee County, Florida.

4. Defendant is a Florida limited liability company, with its principal place of business located at 541 Park Street, FL 34698 in Pinellas County, Florida.

---

[1] Plaintiff intends amend this Complaint to add claims under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101-12117 ("ADA"), and the Florida Civil Rights Act ("FCRA"), upon receipt of a Right to Sue from the EEOC or FCHR.

5. Defendant conducts business in Lee and Collier counties, and is registered with the Florida Department of State, Division of Corporations, to conduct business in the State of Florida.

6. The actions giving rise to this Complaint occurred in Lee County, Florida. The wrongful acts alleged herein, including Plaintiff's termination, the interference with Plaintiff's rights, and the unlawful pay practice, occurred in the Middle District of Florida, Lee County.

7. Venue is proper in the Middle District of Florida, Fort Myers Division.

## STATEMENT OF FACTS

8. Defendant is a franchisee that operates approximately eighteen (18) Take 5 Oil Change locations. Defendant's stores are located in: Bradenton (2x), Sarasota, Palmetto, Arcadia, Port Charlotte (2x), North Port, Cape Coral (3x), Fort Myers (2x), North Fort Myers, Sebring, and West Palm Beach (3x).

9. Each of Defendant's stores employs 5-10 employees.

10. Take 5 stores offer quick oil changes, minor repairs and other maintenance service, and is known for its stay-in-your-car oil change model.

11. Plaintiff was employed by Defendant in a full-time capacity from 2022 until July 23, 2025 in the position of Store Manager.

12. Plaintiff worked at Defendant's shops in Fort Myers (2 locations), North Port, Port Charlotte, and North Fort Myers.

13. Plaintiff was paid a base salary, plus a commission on sales for certain items.

14. Plaintiff regularly worked more than forty (40) hours in a workweek. In fact, Defendant's written policy requires Store Managers to work a minimum of 55 hours per week.

15. Defendants did not pay overtime wages to Plaintiff.

16. Defendant classified Plaintiff as "exempt." However, Plaintiff did not qualify for the FLSA executive exemption, or any other exemption, because her primary duties were not managerial but instead were manual labor.

17. At each Take 5 shop, the store employees rotate three positions as they are "rolling cars" throughout the day. When a car comes into a bay, the employees will take either the "pit," the "hood,", or the "service writer" position on the car. As cars are finished or arrive in another bay, the employees rotate to the next position, taking turns in each role. Frequently, the store is left to run this process with just two employees, the Store Manager and one technician.

18. As the Store Manager, Plaintiff was required to be "on the floor," assuming one of the three positions (pit, hood, or service writer) at all times while the store is open.

19. If the store's allotment of labor hours is limited or if an employee calls off, the Store Manager is frequently required to work with only one hourly employee for an entire day. When this happens, the Store Manager and other employee will rotate each car between the service writer position and the pit/hood roles, for the entire day.

20. Plaintiff was advised that under no circumstances could she leave the store unattended.

21. On Friday June 6, 2025, Plaintiff was working alone at the Fort Myers location because a scheduled employee called out.

22. Plaintiff contacted her District Manager Nick requesting him to send an employee to the store to assist.

23. No employee was immediately available.

24. That day, Plaintiff sustained a severe finger laceration while working on a customer's car.

25. Plaintiff immediately contacted DM Nick with a picture of the laceration, stating she needed stiches because the bleeding persisted.

26. Plaintiff was not permitted to seek medical treatment despite her requests.

27. Over an hour later, when another employee arrived, Plaintiff was finally permitted to seek medical attention and went to the emergency room.

28. Defendant did not report Plaintiff's injury to its workers' compensation carrier.

29. On Saturday June 7, 2025, Plaintiff was working at the Fort Myers location.

30. She had to leave the store to pick up supplies from one of Defendant's other stores.

31. While driving to retrieve the supplies, Plaintiff was in a car accident, sustaining injuries including brain, neck, and back.

32. Plaintiff immediately notified DM Nick that she was in a car accident.

33. DM Nick did not report Plaintiff's work-related car accident injuries.

34. Instead, DM Nick stated that the other driver's insurance should provide coverage.

35. Despite her work-related injuries, Defendant did not provide Plaintiff with medical treatment, workers' compensation benefits, or medical leave.

36. Plaintiff was forced to work through the pain and limitations.

37. Plaintiff continued to update her DM about her ongoing medical treatment.

38. Despite Plaintiff reporting her work-related injury, Defendant failed to provide any legally required notices.

39. On July 3, 2025, nearly a month after Plaintiff first reported her injury, Defendant still had not provided any workers' compensation or leave. Accordingly, Plaintiff specifically stated "I think I need to go ahead and file both the crash and the thumb under workers comp…"

40. Instead of providing the legally entitled and requested workers' compensation, Defendant responded, "The accident I'm pretty sure the lady's insurance should 100% pay and handle since it was her fault…When you went to the hospital about your thumb did you tell them?"

41. Two days later, Defendant still had not provided any information to Plaintiff. Defendant told Plaintiff to report to work on Monday, July 7.

42. On July 7, 2025, Plaintiff told DM Nick she was unable to report to work due to her injuries.

43. On July 10, 2025, Plaintiff provided an update on her medical condition.

44. Defendant failed to provide any medical leave despite Plaintiff's request.

45. Defendant did not respond to the update until Monday July 14 at 3:14pm, by asking "Are you able to work? Light duty? Anything?"

46. Plaintiff responded the following day that she would be able to work light duty and would need to leave for medical appointments.

47. Still refusing to allow workers' compensation benefits, Defendant informed Plaintiff that her only option would be a demotion to Assistant Manager with less pay.

48. Plaintiff agreed to take time to consider the demotion.

49. Defendant did not communicate with Plaintiff after July 15, 2025 for an entire week.

50. On July 22, 2025, without any warning or discussion, Defendant terminated Plaintiff for "abandoning [her] job."

51. Plaintiff immediately responded that she planned to come back to light duty with the doctor's restrictions in place and provided the treating physician's medical documentation.

52. Defendant did not respond. Instead, the following day, Defendant stated it was proceeding with termination.

53. Defendant terminated Plaintiff on July 23, 2025.

## COUNT I
### Family Medical Leave Act
### (Interference with Plaintiff's Exercise of FMLA Rights)

54. Plaintiff realleges and incorporates allegations 1–53.

55. At all times material, Defendant was engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of the 20 or more calendar workweeks in the then current or preceding calendar year.

56. At times material, Plaintiff was employed at a work site or location where Defendant employed 50 or more employees within a 75 mile radius.

57. At all times material, Plaintiff was an employee eligible for FMLA leave because she was employed at least 12 months and worked at least 1250 hours during the 12-month period immediately preceding her FMLA leave request.

58. Plaintiff qualified for FMLA leave because she had a "serious health condition" under 29 U.S.C. § 2611(11) and 29 U.S.C. § 2612(a)(1)(D). Specifically, Plaintiff had an injury, impairment and physical condition that required continuing treatment by a healthcare provider.

59. Defendant was given notice of Plaintiff's need for FMLA leave due to a serious health condition.

60. Defendant interfered with Plaintiff's FMLA rights under 29 U.S.C. § 2615(a)(1) by doing the following:

    a.    Failing to notify Plaintiff of her eligibility and rights under the FMLA after Defendant had notice of Plaintiff's need for FMLA leave and after Plaintiff requested leave.

    b.    Terminated Plaintiff while she was on FMLA qualifying leave without consideration of her rights under the FMLA including her right to be reinstated into the same or a substantially similar position.

    c.    Failed to reinstate Plaintiff to the same or a substantially similar position as required by the FMLA.

61. As a result of Defendant's actions, Plaintiff has suffered damages and seeks to recover lost wages, benefits, interest, liquidated damages and attorney's fees and costs, and such other relief as is allowed under the FMLA and authorized by the Court.

## COUNT II
### Family Medical Leave Act
### (FMLA Retaliation/Discrimination)

62. Plaintiff realleges and incorporates allegations 1-53, 55-59.

63. Plaintiff engaged in protected activity under the FMLA when she requested leave for a qualifying serious health condition under the FMLA.

64. Plaintiff suffered an adverse employment action (discharge).

65. Plaintiff was terminated and discriminated against Plaintiff because of her need for FMLA protected leave.

66. As a result of Defendant's actions, Plaintiff has suffered damages and seeks to recover lost wages, benefits, interest, liquidated damages, attorney's fees and costs, and such other relief as is allowed under the FMLA and authorized by the Court.

**WHEREFORE**, Plaintiff prays for the following relief under both **Count I** and **Count II**:

    a. Lost back wages and benefits;
    b. Front pay;
    c. Interest;
    d. Liquidated damages;
    e. Attorney's fees and costs;
    f. All such other relief as the Court deems proper.

## COUNT III

### Workers' Compensation Retaliation

67. Plaintiff realleges and incorporates allegations 1-53.

68. This is a statutory cause of action for wrongful termination under the Florida Workers' Compensation Act ("FWCA"), Fla. Stat. § 440.205.

69. At all times material, Plaintiff was an "employee" within the meaning of Fla. Stat. § 440.02(15)(a).

70. At all times material, Defendant was an "employer" within the meaning of Fla. Stat. § 440.02(16).

71. All conditions precedent to bringing this action have been performed or have occurred.

72. Fla. Stat. § 440.205 provides as follows:

> § 440.205 **Coercion of employees**.—No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers Compensation Law.

73. While working, Plaintiff became injured on two occasions.

74. Plaintiff immediately notified her direct supervisor and reported the injuries.

75. Defendant refused to file a workers' compensation claim on Plaintiff's behalf.

76. Despite requests, Plaintiff was dissuaded from filing a workers' compensation claim.

77. Defendant terminated Plaintiff on July 23, 2025.

78. As justification for the termination, Defendant stated that Plaintiff abandoned the job, which was false as Plaintiff had continually asserted her need for light duty or workers' compensation leave.

79. By reporting a workplace injury and requesting Defendant file a workers' compensation claim, Plaintiff engaged in protected activity under Fla. Stat. § 440.205.

80. Defendant engaged in a prohibited and unlawful practice by wrongfully discharging Plaintiff from his employment on July 23, 2025.

81. Defendant's reasoning for Plaintiff's termination lacked logical justification and served as a pretext for retaliation.

82. Defendant's decision to terminate Plaintiff was motivated by her lawful exercise of rights under the Florida Workers' Compensation Act.

83. Defendant's actions constitute a violation of Fla. Stat. § 440.205.

84. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including but not limited to lost wages, emotional distress, and other compensatory damages.

**WHEREFORE**, Plaintiff seeks entry of judgment in her favor, and for recovery of all damages allowable, including lost wages, past and future, and the value of any lost benefits. Plaintiff seeks all general damages permitted under Florida law and according to proof.

## COUNT IV

### VIOLATION OF 29 U.S.C. §207 (UNPAID OVERTIME)

85. Plaintiff realleges and incorporates allegations 1–53.

86. This action is for unpaid overtime compensation arising under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA").

87. At all times material to this action, Defendant was Plaintiff's "employer" and Plaintiff was an "employee" of Defendant.

88. At all times material, Defendant employed at least two or more employees who handled, sold, or otherwise worked with goods or materials moved through interstate commerce, which were used directly in furtherance of Defendant's commercial activities.

11

89. At all times material, Defendant had gross sales volume of at least $500,000.00 annually.

90. At all times material, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

91. Throughout her employment, Plaintiff worked hours and work weeks in excess of forty (40) hours per week for which she was not compensated at the statutory rate of time and one-half the regular rate for all hours actually worked.

92. Plaintiff is entitled to be paid at the rate of time and one-half her regular hourly rate for all hours worked in excess of the maximum hours provided for in the FLSA.

93. Defendant failed to pay Plaintiff overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

94. Defendant's actions in failing to pay Plaintiff unpaid overtime were unreasonable, willful, and in bad faith.

95. Pursuant to 29 U.S.C. 216 (b), Plaintiff is entitled to recover unpaid overtime compensation plus liquidated damages in an equal amount.

**WHEREFORE**, Plaintiff, respectfully requests the following relief:

    a. A declaration that Defendant has violated the overtime provisions of 29 U.S.C. § 207

    b. Unpaid overtime compensation

    c. Liquidated damages

    d.      Attorney fees and costs pursuant to 29 U.S.C. § 216(b), and

    e.      Any other relief this Court deems to be just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right.

Respectfully submitted,

/s/ Jason L. Gunter
Jason L. Gunter
Fla. Bar No. 0134694
Email: Jason@GunterFirm.com
Conor P. Foley
Fla. Bar No. 111977
Email: Conor@GunterFirm.com
Peter M. Jennings
Fla. Bar No. 1054512
Email: Peter@GunterFirm.com

**GUNTERFIRM**
2165 W. First St., #104
Fort Myers, FL 33901
Tel: 239.334.7017